## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KENNETH DARNELL HICKS,

                Plaintiff,

v.

CARCO GROUP INC. d/b/a/ DRIVER IQ
and TRANS UNION, LLC,

                Defendant.

**Case No.:**


**JURY TRIAL DEMANDED**

## COMPLAINT

Kenneth Darnell Hicks ("Plaintiff" or "Mr. Hicks") by and through his counsel brings the following Complaint against Carco Group Inc. d/b/a Driver iQ ( "Driver iQ") and Trans Union, LLC ("Trans Union"), collectively "Defendants," for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of consumer reports that Defendants published concerning Plaintiff, which falsely portrayed Plaintiff as having a violation for operating without brakes as required by law.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.    Defendants are consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. They sell consumer reports generated from their

1

database and furnish these consumer reports to other consumer reporting agencies and/or employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Trans Union falsely reported to Driver iQ that Plaintiff had a violation for operating a vehicle without brakes as required by law.

4.      Driver iQ falsely reported to Plaintiff's prospective employer that Plaintiff had a violation for operating a vehicle without brakes as required by law.

5.      Defendants' reporting is grossly inaccurate and untrue.

6.      Plaintiff has never been ticketed for or charged with operating a vehicle without brakes as required by law in his life.

7.      Plaintiff's prospective employer *de facto* denied Plaintiff's job application after receiving an employment background check report from Driver iQ, which included the inaccurate driving record.

8.      Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available underlying public court records from Tiffin/Fostoria Municipal Court in Ohio, regarding the violation at issue, prior to publishing Plaintiff's reports.

9.      Had Defendants performed even a cursory review of the underlying public court records, they would have discovered that Plaintiff has never been ticketed for or charged with operating a vehicle without brakes as required by law. Rather, the public court

records indicate Plaintiff was ticketed for "improper backing," also referred to as a "starting/backing" violation within the Ohio BMV.

10. Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failures to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

11. Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate motor vehicle record information.

12. Defendants' inaccurate reports cost Plaintiff a good paying job and job security.

13. As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14. As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct

a reasonable reinvestigation to determine whether the information Plaintiff disputed – the **operating a vehicle without brakes as required by law** violation – was inaccurate and should be corrected in the subject consumer reports, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

15.     Kenneth Darnell Hicks ("Plaintiff" or "Mr. Hicks") is a natural person currently residing in Colorado Springs, Colorado. However, at the time of Plaintiff's consumer reports and dispute, Plaintiff was a resident of Westland, Michigan. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Carco Group Inc. d/b/a Driver iQ ( "Driver iQ") is a Delaware corporation doing business throughout the United States, including the State of Michigan and in this District, and has a principal place of business located at 5000 Corporate Court, Suite 203, Holtsville, New York 11742, and it can be served with process by way of its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

17.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company corporation doing business throughout the United States, including the State of Michigan and in this District, and has a principal place of business located at 555 West Adams Street, Chicago, IL 60661 and it can be served with process by way of its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

18.    Among other things, Defendants sells background checks ("consumer reports") to other consumer reporting agencies and/or employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

19.    Defendants are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

22.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial

moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

23. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

24. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

25. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

26. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates background checks reports like the ones Defendants prepared in Plaintiff's name.

27. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

28.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendants, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

29.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

30.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

31.     Defendants disregarded their duties under the FCRA with respect to Plaintiff's consumer reports.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

32.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including motor vehicle records and public court records. As a result of the increasing availability of this data, there has been a boom in the background check industry.

33.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

34.     The background check industry takes in revenues in excess of three billion dollars, annually.[2]

35.     Background checks/consumer reports are generally created by running automated searches through giant databases of aggregated data. The reports are created and disseminated with little to no manual, in-person review, and the underlying public records are rarely directly reviewed in creating background check reports.

36.     Consumer reporting agencies, like Defendants, collect millions of motor vehicle records from a number of sources with data from city, county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

37.     Given that Defendants are in the business of selling consumer reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

38.     Defendants place their business interests above the rights of consumers and report such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

39.     Defendants report such erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

40.     Defendants charge their customers the same price for reports that are grossly inaccurate as they do for accurate reports.

41.     Appropriate quality control review of Plaintiff's reports would have made clear that Defendants were inaccurately reporting an improper backing violation as a violation for operating without brakes as required by law.

42.     As providers of consumer reports, Defendants should be aware of the FCRA requirements and are likely members of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Applies for a Job with Dart Transit Co.

43.     In or around 2021, Plaintiff decided to make a career move and obtained his

Commercial Driver's License ("CDL").

44.     Accordingly, in or around late-2021, Plaintiff applied for full-time

employment as a truck driver with Dart Transit Co. ("Dart").

45.     Plaintiff was particularly interested in the job because of the benefits offered,

and he believed Dart to be a reputable company.

46.     As a part of his application, Plaintiff consented to a background check

("consumer report.")

### Defendants Published Inaccurate Consumer Reports About Plaintiff

47.     Dart contracted with Driver iQ to conduct background checks, including

motor vehicle/driving history background checks, on its prospective employees.

48.     On or about March 21, 2022, Dart ordered a consumer report on Plaintiff

from Driver iQ.

49.     In turn, Driver iQ ordered a consumer report on Plaintiff from Trans Union.

50.     Sometime thereafter, in accordance with its standard procedures, Trans

Union completed its report about Plaintiff and sold the same to Driver iQ.

51.     Upon information and belief, within that consumer report, Trans Union

published inaccurate information about Plaintiff.

52.     Upon information and belief, Trans Union's consumer report about Plaintiff included a grossly inaccurate and stigmatizing violation for operating without brakes as required by law ("Violation at Issue").

53.     On or about March 21, 2022, in accordance with its standard procedures, Driver iQ completed its consumer report about Plaintiff and sold the same to Dart.

54.     Within that consumer report, Driver iQ published inaccurate information about Plaintiff.

55.     Specifically, Driver iQ's consumer report about Plaintiff also included the grossly inaccurate and stigmatizing Violation at Issue which appeared in the consumer report as follows:

| VIOLATION DATE | DISPOSITION DATE | NOTES | STATE | ACD CODE |
|---|---|---|---|---|
| 01/16/2020 | 02/03/2020 | OPERATING WITHOUT BRAKES AS REQUIRED BY LAW INVOLVED COMMERCIAL VEHICLE | OH | N82 |

56.     The Violation at Issue reported by Defendants about Plaintiff is inaccurate.

57.     Plaintiff has never been ticketed for or charged with operating without brakes as required by law in his life.

58.     A cursory review of the widely available underlying public court records confirms that Plaintiff was never ticketed for or charged with operating without brakes as required by law. Rather, the public record confirms that the violation was merely for "improper backing," which is also referred to by the Ohio BMV as a violation for "starting/backing."

59.     Further, the very face of the consumer report indicates the reported violation had an ACD[3] code of "N82."

60.     As procurers of motor vehicle records, Defendants should be familiar with the ACD codes and their meanings.

61.     Had Defendants even made a cursory review of the background check reports at issue, they would have discovered an obvious discrepancy that should have caused Defendants to realize that the violation was reported inaccurately.

62.     An ACD code of "N82" is the nationwide code for "improper backing."[4]

63.     The ACD code for "operating without brakes as required by law" is E02.[5]

64.     This exculpatory information is widely available public information and was available to Defendants prior to their publication of Plaintiff's consumer reports at no cost.

65.     The sole reason the inaccurate violation was reported as belonging to Plaintiff was that Defendants failed to follow reasonable procedures to assure the

---

[3] ACD stands for AAMVA Code Dictionary Manual. *AAMVA Code Dictionary (ACD)*, AAMVA,  https://www.aamva.org/technology/technology-standards/acd  (last accessed Oct. 18, 2023). It is a standardized set of codes used nationwide to identify (1) the type of driver conviction, or (2) the reason for a driver withdrawal. *Id*.

[4]     *AAMVA     Code     Dictionary     Manual     5.2.5*,     AAMVA, https://www.aamva.org/getmedia/b1fd2b7f-8040-4764-9b4e-4ca464c43a2c/ACD-Manual-5-2-5.pdf (last accessed October 18, 2023).

[5] *Id*.

maximum possible accuracy of the information they published within the consumer reports they sold about Plaintiff.

66.    Had Defendants followed reasonable procedures, they would have discovered that Plaintiff has never been ticketed for or charged with operating without brakes as required by law, and they would not have reported the same.

67.    In preparing and selling consumer reports about Plaintiff, wherein Defendants published inaccurate information about Plaintiff, Defendants failed to follow reasonable procedures to assure that the reports were as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Dart Denies Plaintiff's Job Application**

68.    Shortly thereafter, Plaintiff discovered that he was no longer being considered for the position and was *de facto* denied by Dart.

69.    Plaintiff was confused because he had no reason to believe that anything within his background check would disqualify him for the position. Further, Plaintiff had never had issues with his background checks before.

70.    Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked upon reviewing the Violation at Issue contained within the subject consumer report.

71.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of his motor vehicles records/driving history, both in relation to the Dart position, but also the impact of the same on his future.

72.     Specifically, Defendants reported Plaintiff's violation for "improper backing" as a violation for "operating without brakes as required by law." The underlying public records were available to Defendants prior to publishing Plaintiff's consumer reports, but Defendants failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation on his Consumer Reports**

73.     In or before March 2022, desperate to secure employment with Dart and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Driver iQ by phone.

74.     Plaintiff identified himself and provided information to Driver iQ to support his dispute.

75.     Plaintiff specifically disputed the inaccurate reporting of the **operating without brakes as required by law** violation on his consumer reports.

76.     Plaintiff specifically asked Driver iQ to investigate and correct its reporting in any consumer report about Plaintiff.

77.     Upon information and belief, following Plaintiff's call with Driver iQ, Plaintiff emailed Driver iQ a copy of the ticket he received, proving the violation was for improper backing.

78.     Upon information and belief, after receiving Plaintiff's dispute, Driver iQ forwarded the dispute to Trans Union.

**Defendants Failed to Conduct Reasonable Reinvestigations and Correct the Consumer Reports**

79.    In or around April 2022, Plaintiff received correspondence from Driver iQ dated March 31, 2022. In its letter, Driver iQ confirmed that it had reinvestigated Plaintiff's dispute and would not be making any revisions.

80.    Specifically, Driver iQ stated that it had confirmed with Trans Union that the Violation at Issue was reporting accurately.

81.    Driver iQ also told Plaintiff that if he still believed there to be an inaccuracy, he would need to contact the Michigan Department of State directly.

82.    Defendants failed to issue corrected consumer reports.

83.    Despite Plaintiff's dispute, Defendants failed to conduct reasonable reinvestigations of Plaintiff's March 2022 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

84.    Because Defendants failed to issue corrected consumer reports, Dart did not offer the position to Plaintiff.

85.    Upon information and belief, had Defendants reported accurate information about Plaintiff, Plaintiff would have been offered the job with Dart, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendants' erroneous reporting.

86.    Defendants' false reports cost Plaintiff a promising, well-paying job with Dart.

87.    Plaintiff had obtained a Commercial Driver's License to work in the trucking industry and wanted to work for a reputable company like Dart. Moreover, the position

with Dart was full-time and offered a competitive benefits package. More importantly, Plaintiff was excited to work as a truck driver because he was qualified to successfully perform the work and was eager to pursue a career as a truck driver.

88.    The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

89.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

90.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

91.     Defendants are "consumer reporting agenc[ies]" as defined by 15 U.S.C. § 1681a(f).

92.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

93.     At all times pertinent hereto, the above-mentioned background check reports were "consumer report[s]" as that term is defined by 15 U.S.C. § 1681a(d).

94.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer reports they sold about Plaintiff as well as the information they published within the same.

95.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

96.     Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

97.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

98.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

99.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

100.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

101.    On at least one occasion during 2022, Plaintiff disputed the inaccurate information with Defendants and requested that Defendants correct the inaccurate information in the consumer report that is patently inaccurate, misleading, and highly

damaging to him, namely, stating that he had a violation for operating without brakes as required by law.

102.    In response to Plaintiff's dispute, Defendants failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer reports and refused to correct the consumer reports at issue.

103.    Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject consumer reports; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source they have reason to know is unreliable.

104.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

105.    Defendants willfully violated 15 U.S.C. § 1681i in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this day 27th of October 2023.

**CONSUMER ATTORNEYS, PLC**

*/s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar #036711
David A. Chami, AZ No. 027585
Sylvia Bolos MI Bar No. P78715
8245 N. 85th Way
Scottsdale, AZ 85258
T: 480-626-2376
E: mczabaj@consumerattorneys.com

*Attorneys for Plaintiff*
*Kenneth Darnell Hicks*